# EXHIBIT 1



Anthony M. Barnes (Bar No. 199048)
Email: amb@atalawgroup.com
Erica Maharg (Bar No. 279396)
Email: eam@atalawgroup.com
Kenya Rothstein (Bar No. 340854)
Email: ksr@atalawgroup.com
Aqua Terra Aeris Law Group
8 Rio Vista Ave.
Oakland, CA 94611
Telephone: (917) 371-8293

Erina S. Kwon (Bar No. 235079)
Email: erina@lawaterkeeper.org
Benjamin Harris (Bar No. 313193)
Email: ben@lawaterkeeper.org
LOS ANGELES WATERKEEPER
360 E 2nd Street, Suite 250
Los Angeles, CA 90012
Phone: (310) 394-6162

Attorneys for Plaintiff
LOS ANGELES WATERKEEPER

## UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| LOS ANGELES WATERKEEPER, a California non-profit association,<br><br>Plaintiff,<br><br>v.<br><br>UNION PACIFIC RAILROAD COMPANY, a Delaware Corporation,<br><br>Defendant. | Case No.: 2:24-cv-09956-SRM-JPR<br><br>**[PROPOSED] CONSENT DECREE** |

1

1  WILLIAM CARLON (Bar No. 305739)
   Email: william@carlonlaw.com
2  LAW OFFICE OF WILLIAM CARLON
3  437 Post Street
   Napa, CA 94559
4  Tel: (530) 514-4115
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

[PROPOSED] CONSENT DECREE

## CONSENT DECREE

**WHEREAS,** Plaintiff Los Angeles Waterkeeper ("LA Waterkeeper" or "Plaintiff") is a 501(c)(3) non-profit public benefit corporation organized under the laws of the State of California, with its main office in Los Angeles, California;

**WHEREAS,** Defendant Union Pacific Railroad Company ("Defendant") owns and operates four Facilities located at: (1) 17225 Arenth Ave., City of Industry, CA 91745 ("City of Industry Facility"); (2) 2442 E. Carson St., Long Beach CA, 90810, ("Dolores Facility"); (3) 2401 E. Sepulveda Blvd., Long Beach, CA 90810 ("ICTF Facility"); and (4) 8636 Sorensen St., Santa Fe Springs, CA 90670 ("Valla Facility") (collectively, the "Facilities"), with following Waste Discharger Identification numbers: City of Industry Facility - 4 19I004578; Dolores Facility - 4 19I013943; ICTF Facility - 4 19I013944; and Valla Facility - 4 19I028582;

**WHEREAS,** the Facilities' industrial activities consist of railroad transportation operations. The Facilities are each categorized under Standard Industrial Classification ("SIC") Code 4011, covering Railroads, Line-Haul Operating;

**WHEREAS,** storm water discharges associated with industrial activity at the Facilities are regulated by the National Pollutant Discharge Elimination System ("NPDES") General Permit No. CAS000001 [State Water Resources Control Board], Water Quality Order 2014-0057-DWQ, as amended by Order Nos. 2015-0122-DWQ and 2018-0028-DWQ incorporating: (1) Federal Sufficiently Sensitive Test Method Ruling; (2) Total Maximum Daily Load Implementation Requirements; and (3) Statewide Compliance Options Incentivizing On-Site or Regional Storm Water Capture and Use, at the Facilities ("General Permit" or "Permit")[1], and the Federal

---

[1] Any references to the "General Permit" or "Permit" herein shall be to the then-effective version, regardless of whether such changes are the result of amendments, revisions, reissuance, or similar modification of material terms. Any reference in this Consent Decree to specific sections or subsections of the General Permit that are moved, modified, or otherwise changed in a subsequent

[PROPOSED] CONSENT DECREE

Water Pollution Control Act, 33 U.S.C. §§ 1251, *et seq.* ("Clean Water Act" or "CWA"), Sections 301(a) and 402, 33 U.S.C. §§ 1311(a), 1342;

**WHEREAS**, Plaintiff asserts that Defendant's operations at the Facilities result in discharges of pollutants into waters of the United States and are regulated by the Clean Water Act Sections 301(a) and 402. 33 U.S.C. §§ 1311(a), 1342, and Defendant neither admits nor denies this allegation and does not contest it here;

**WHEREAS**, the General Permit requires all permittees, including Defendant, to comply with, inter alia, the following mandates: (1) develop and implement a storm water pollution prevention plan and a storm water monitoring implementation plan, (2) control pollutant discharges through the development and application of Best Management Practices, which must be detailed in and timely updated in the SWPPP, (3) reduce and control discharges necessary to support attainment of applicable Water Quality Standards, and (4) implement a monitoring and reporting program, including the MIP, designed to assess compliance with the Permit;

**WHEREAS**, on September 12, 2024 Plaintiff issued a notice of intent to file suit ("60-Day Notice Letter") to Defendant, its registered agent, the Administrator of the United States Environmental Protection Agency ("EPA"), the Executive Director of the State Water Resources Control Board ("State Board"), the Executive Officer of the Los Angeles Regional Water Quality Control Board ("Regional Board"), the Regional Administrator of EPA Region IX, and the U.S. Attorney General of the U.S. Department of Justice, alleging violations of the Clean Water Act and the General Permit at the Facilities;

**WHEREAS**, on November 18, 2024, LA Waterkeeper filed a complaint against Defendant in the Central District of California ("Court"), Civil Case No. 2:24-cv-09956-RGK-JPR ("Complaint");

---

version of the General Permit shall be to such subsequent reference(s) as if set forth herein, *e.g.*, the current §XI.B.6.c may be renumbered as §XI.B.7.c, combined into the current §XI.B.6.d, or split into a new §XI.B.6.c and §XI.B.6.d.

**WHEREAS**, Plaintiff's Complaint alleged violations of the General Permit and the Clean Water Act for Defendant's discharges of pollutants into storm drains and surface waters, including the Dominguez Channel Estuary, the San Gabriel River, San Jose Creek, and Coyote Creek (collectively, "Receiving Waters");

**WHEREAS**, without any concession or admission by Defendant that it has violated the Clean Water Act or the General Permit, Plaintiff and Defendant (collectively, "Settling Parties" or "Parties") agree that it is in their mutual interest to enter into a Consent Decree setting forth terms and conditions appropriate to resolving the allegations set forth in the 60-Day Notice Letter and Complaint without further proceedings;

**WHEREAS**, all actions taken by Defendant pursuant to this Consent Decree shall be made in compliance with all applicable federal, state and local laws, rules and regulations.

**NOW, THEREFORE, IT IS HEREBY STIPULATED BETWEEN THE SETTLING PARTIES AND ORDERED AND DECREED BY THE COURT AS FOLLOWS:**

1.      Jurisdiction over this action is conferred by 28 U.S.C. § 1331 (federal question) and Section 505(a)(1)(A) of the CWA, 33 U.S.C. § 1365(a)(1)(A). Plaintiff asserts, and Defendant does not contest, that Plaintiff has complied with the statutory notice requirements under the CWA, 33 U.S.C. § 1365(a)(1), and the corresponding regulations at 40 C.F.R. § 135.2.

2.      Venue is appropriate in the Central District Court pursuant to Section 505(c)(1) of the CWA, 33 U.S.C. § 1365(c)(1), because the Facilities at which the alleged violations are taking place is located within this District.

3.      The Complaint states a claim upon which relief may be granted against Defendant pursuant to Section 505 of the CWA, 33 U.S.C. § 1365.

4.      Plaintiff asserts, and Defendant does not contest, that LA Waterkeeper has standing to bring this action.

5.      The Court shall retain jurisdiction over this matter for the purposes of interpreting, modifying, or enforcing the terms and conditions of this Consent Decree and adjudicating all disputes among the Parties that may arise under the provisions of this Consent Decree, for the Term (as defined below) of this Consent Decree including for as long as necessary for the Court to resolve any motion to enforce this Consent Decree, but only regarding issues raised within the Term. The Court shall have the power to enforce this Consent Decree with all available legal and equitable remedies, including contempt.

## I.      OBJECTIVES

6.      It is the express purpose of the Settling Parties through this Consent Decree to resolve all issues alleged by LA Waterkeeper in its 60-Day Notice Letter and Complaint. These objectives include compliance with the provisions of this Consent Decree, compliance with all terms and conditions of the General Permit, and compliance with all applicable sections of the CWA.

7.      In light of these objectives and as set forth fully below, Defendant agrees to comply with the provisions of this Consent Decree, terms and conditions of the General Permit, and all applicable sections of the CWA at the Facilities.

## II.     AGENCY REVIEW AND DEFINITIONS

### A.      AGENCY REVIEW OF CONSENT DECREE

8.      <u>Agency Review</u>. Plaintiff shall submit this Consent Decree to the United States Department of Justice and the United States Environmental Protection Agency (the "Federal Agencies") for agency review consistent with 40 C.F.R. § 135.5. The agency review period expires forty-five (45) calendar days after receipt by the Federal Agencies, as evidenced by certified return receipts, or upon the date that the Federal Agencies provide a no objection letter, whichever is earlier ("Agency Review Period"). In the event that the Federal Agencies object to entry of this Consent Decree or to any portion of this Consent Decree, the Parties agree to meet and confer to attempt to resolve the issue(s) raised by the Federal Agencies. If the Parties are

[PROPOSED] CONSENT DECREE

unable to resolve any issue(s) raised by the Federal Agencies in their comments, the Parties agree to expeditiously seek a settlement conference with the assigned Magistrate Judge to resolve any issue(s).

9.    Court Notice. Plaintiff shall notify the Court of the receipt date by the Federal Agencies, as required by 40 C.F.R. § 135.5, in order to coordinate the Court's calendar with the 45-day review period.

10.    Entry of Consent Decree. Following the expiration of the Agency Review Period, Plaintiff shall submit the Consent Decree to the Court for entry.

**B.    DEFINITIONS**

11.    Unless otherwise expressly defined herein, terms used in this Consent Decree which are defined in the CWA or in regulations or rules promulgated under the CWA have the meaning assigned to them in the statutes or regulations or rules. Whenever terms listed below are used in this Consent Decree, whether or not capitalized, the following definitions apply:

    a.    "BAT" means Best Available Technology Economically Achievable and shall have the same definition as provided in the General Permit.

    b.    "BCT" means the Best Conventional Pollutant Control Technology and shall have the same definition as provided in the General Permit. BCT collectively with BAT is referred to herein as "BAT/BCT."

    c.    "BMPs" means Best Management Practices as defined in Attachment C (Glossary) of the General Permit.

    d.    "Consent Decree" means this Consent Decree and any attachments or documents incorporated by reference.

    e.    "Day" means a calendar day. In computing any period of time under this Consent Decree, where the last day of such period is a Saturday, Sunday, or Federal or State Holiday, the period runs

1  until the close of business on the next day that is not a Saturday,

2  Sunday, or Federal or State Holiday.

3      f.    "Design Storm" means the design storm calculated in accordance

4  with the design storm standards set forth in General Permit for

5  Volume-based BMPs (General Permit § X.H.6.a.) or Flow-based

6  BMPs (General Permit § X.H.6.b.).

7      g.    "Discharge Point" means each discharge location designated in

8  the then-current SWPPP for the Facilities.

9      h.    "Effective Date" means the effective date of this Consent Decree,

10  which shall be the date of full execution by the Parties.

11      i.    "Entry Date" means the day this Consent Decree is approved and

12  entered by the Court.

13      j.    "Forecasted Rain Event"[2] means a forecasted rain event with a

14  fifty percent (50%) or greater chance of precipitation of 0.25

15  inches or more in any given 24-hour period at least 48 hours in

16  advance of the expected precipitation with minimum antecedent

17  dry period of 72 hours prior to the beginning of the rain event as

18  determined by the National Oceanic and Atmospheric

19  Administration (https://forecast.weather.gov/) for:

20      1.    Dolores Facility. "Long Beach, CA" available at

21  https://forecast.weather.gov/MapClick.php?lat=33.8279&lon=-

22  118.2287&unit=0&lg=english&FcstType=graphical

23

24

25

---

26  [2] If the NOAA forecast shows precipitation less than 0.25 inches for the next 48 hours, it is not a

27  "Forecasted Rain Event" if it does precipitate above that amount in the ensuing 48 hours. For example, if the NOAA forecast at Monday at 12 p.m. PT shows no precipitation from that time to

28  Wednesday at 12 p.m. PT but it does, in fact, rain 0.25 inches on Tuesday, no "Forecasted Rain Event" would have occurred for purposes of this Consent Decree.

8

2.  ICTF Facility. "Long Beach, CA" available at https://forecast.weather.gov/MapClick.php?lat=33.8053&lon=-118.2243&unit=0&lg=english&FcstType=graphical

3.  City of Industry Facility. "City of Industry, CA" available at https://forecast.weather.gov/MapClick.php?lat=34.0113&lon=-117.9433&unit=0&lg=english&FcstType=graphical

4.  Valla Facility. "Santa Fe Springs, CA" available at https://forecast.weather.gov/MapClick.php?lat=33.9586&lon=-118.0589&unit=0&lg=english&FcstType=graphical

k.  "MIP" means a Monitoring Implementation Plan.

l.  "PPT" means Pollution Prevention Team.

m.  "Qualified Industrial Storm Water Practitioner" or "QISP" shall have the definition set forth in Section IX.A.1 of the General Permit.

n.  "Qualifying Storm Event" or "QSE" shall have the definition set forth in Section XI.B.1 of the General Permit.

o.  "Regulated Areas" refers to those areas subject to the General Permit, i.e., the drainage areas at the Facility that discharge storm water associated with industrial activity from the Facility.

p.  "Reporting Year" means the period from July 1 of a given calendar year to June 30 of the following calendar year.

q.  "SMARTS" means the California State Water Resources Control Board's Stormwater Multiple Application and Report Tracking System.

r.  "SWPPP" means a Storm Water Pollution Prevention Plan.

s.  "Term" means the period between the Effective Date and the "Termination Date."

t.  "Termination Date" means the latest of:

9

1.     1.  June 30, 2028;

2.     2.  Seven (7) days from the conclusion of any proceeding or process to enforce the Consent Decree; or

3.     3.  Seven (7) days from Defendant's completion of all payments and other affirmative duties required by this Consent Decree.

    u.     "Wet Season" means the period beginning October 1st of any given calendar year and ending April 30th of the following calendar year.

## III.   COMMITMENTS OF THE SETTLING PARTIES

### A.   STORM WATER POLLUTION CONTROL BEST MANAGEMENT PRACTICES

12.    <u>Non-Storm Water Discharge Prohibition.</u> Defendant shall comply with General Permit section I.C.

13.    <u>Best Management Practices.</u> Defendant shall implement BMPs identified in its SWPPP (including any SWPPP updated pursuant to this Decree) and BMPs described herein. At all times, Defendant shall implement BMPs identified in its SWPPP as revised pursuant to this Consent Decree.

14.    <u>Structural and Non-Structural BMPs for the Facilities.</u> As soon as possible but no later than sixty (60) days of the Effective Date, unless otherwise noted, Defendant shall develop and implement (or have already developed and implemented prior to the Effective Date) the following BMPs in Regulated Areas at the Facilities:

    a.     Patch, pave, or otherwise resurface areas of broken pavement or asphalt in those areas as identified on a map, a copy of which is attached hereto as **Exhibit 1**;

    b.     Implement a sweeping program using a regenerative air street sweeper, or equivalent, on paved areas at the Facilities at least once per month outside of the Wet Season and once every two weeks during the Wet Season. For paved areas near outfalls or

storm drains or paved areas draining to outfalls or storm drains
where using regenerative air street sweepers are inaccessible,
employ hand sweeping and/or backpack HEPA vacuums to the
extent practicable;

c.    Consolidate material storage and cover all refuse bins, to the
extent feasible, at each Facility, or store materials in areas subject
to the collection and treatment of storm water;

d.    Employ and secure new wattles/filters/filtration socks (Filtrexx
Envirosoxx or other equivalent media) to remove sediments,
metals, and organic materials in storm water discharged from the
Facilities, and configure such wattles/filters/socks to achieve
maximum contact time with storm water prior to discharge.
Defendant shall, thereafter, employ and secure new
wattles/filters/socks in the same manner annually prior to the start
of the Wet Season, no later than September 15th;

e.    Comply with General Permit Section X.H.1.d on Material
Handling and Waste Management;

f.    Add facility-specific BMPs to drop inlets as identified as part of
the Level 2 Exceedance Response Action (ERA) report, including
drivable mats, and concentric rings around representative sample
locations;

g.    During each Wet Season, as necessary, replace the
wattles/filters/socks when degraded or ineffective, including when
there are rips, tears or other visual damage, and/or sampling data
demonstrating the wattles/filters/socks are not sufficiently
reducing pollutant concentrations;

h.    Within twenty-four (24) hours prior to a Forecasted Rain Event,
inspect all wattles/filters/socks deployed at the Facilities;

i.   Remove any exposed waste material and cover industrial materials, debris and scrap bins, and trash cans with tarps, lids, or other coverings, to the extent feasible, sufficient to prevent exposure to rainfall, including those stored outside and where roof protection is inadequate, or otherwise move them into a covered structure adequate to prevent exposure to rainfall to comply with General Permit Section X.H.2.b.i;

j.   Inspect hazardous material and waste storage areas at least monthly at the Facilities, where such areas occur, for proper implementation and maintenance of control measures and containment integrity;

k.   Conduct equipment and maintenance activities in appropriate work areas or under structural cover;

l.   Use absorbent mats or other similar products during outdoor maintenance activities that pose a risk of spill of industrial fluids to ensure that such spills are promptly contained and cleaned up;

m.   Place spill kits at industrial fluid storage and maintenance locations; and

n.   Keep storm drains clean of clogs.

o.   <u>Semi-Annual Reporting</u>. On January 31 and July 31, Defendant shall submit a written semi-annual report to LA Waterkeeper. This report shall include:

   i.   BMPs being implemented pursuant to this Consent Decree, including with representative photographs, that each BMP has been implemented as set forth above.

   ii.   Laboratory results of samples collected at the Facility pursuant to the General Permit or this Consent Decree,

[PROPOSED] CONSENT DECREE

containing the identification of results that are above the threshold limits in Table 1.

    iii.    Any Action Plan that was triggered pursuant to Paragraph 21, when the applicable Trigger Event occurred at least 30 days prior to the semi-annual reporting deadline.

15.    The updated SWPPP shall have the following site-specific BMP requirements for the identified facilities:

    a.    <u>Site-Specific BMPs for the City of Industry Facility</u>.

        i.    UPRR shall select an appropriate sampling point upstream of SW-10 to provide sampling coverage for regulated industrial activities, if any, in Area 2, based on a review of feasible, safe locations for sampling.

        ii.    UPRR will eliminate regulated activities from Area 1A (including removal of the former fuel tank) and remove Area 1A from the updated SWPPP.

    b.    <u>Site-Specific BMPs for the Dolores Facility</u>. UPRR shall install water wall traffic barriers around the drains SW-02 and SW-03 so that trucks do not drive over BMPs installed there. UPRR will consider whether other feasible, cost-effective, and safe options are available as an alternative action, as part of the ERA process. If an alternative action is selected, UPRR shall provide notice to LA Waterkeeper explaining why the alternative action was selected, and provide LA Waterkeeper 14 calendar days to respond.

    c.    <u>Site-Specific BMPs for the ICTF Facility</u>.

        i.    UPRR shall use two concentric rings of Filtrexx wattles around storm drains in regulated areas, including SW-02 and SW-03.

[PROPOSED] CONSENT DECREE

1             ii.     UPRR will use drop inlet filters at SW-02 and SW-03.

2    **B.**   **SAMPLING AT THE FACILITIES**

3    16.    During the Term, Defendant shall collect samples of storm water discharge from each Discharge Point at the Facilities from at least four (4) Qualifying Storm Events and shall make best efforts to collect the first two (2) Qualifying Storm Events during the first half of the Reporting Year and  the first two (2) Qualifying Storm Events during the second half of the Reporting Year. Such sampling shall take place as soon as possible within the four (4) hour period during the Facilities' operating hours, as required by the General Permit § XI.B.5.

17.    <u>Sampling Parameters</u>. All samples collected pursuant to this Consent Decree shall be analyzed, at minimum, for the parameters listed in Table 1.

18.    <u>Laboratory and Holding Time</u>. Except for pH samples, Defendant shall deliver all samples to a California-certified environmental laboratory for analysis within allowable hold times, pursuant to 40 C.F.R. Part 136. Analysis of pH will be completed onsite using a portable instrument that is calibrated and used according to the manufacturer's instructions.

19.    <u>Detection Limit</u>. Defendant shall request that the laboratory use analytical methods adequate to detect the individual pollutants at or below the values specified in the General Permit and Table 1 below.

20.    <u>Reporting</u>. Defendant shall provide complete laboratory results of all samples collected at the Facilities to SMARTS in accordance with the General Permit, and shall provide copies to LA Waterkeeper pursuant to Paragraph 14.o.

**C.**   **REDUCTION OF POLLUTANTS IN DISCHARGES**

21.    <u>Table 1 Numeric Limits</u>. Defendant shall develop and implement BMPs for storm water discharges from the Facilities that reduce pollutant concentrations to levels that meet limits set forth in Table 1.

[PROPOSED] CONSENT DECREE

**TABLE 1**

| Analytes | Values | Source of Limit |
|---|---|---|
| Total Suspended Solids (TSS) | 400 mg/L (instantaneous)<br>100 mg/L (annual) | NAL |
| Oil & Grease (O&G) | 25 mg/L (instantaneous)<br>15 mg/L (annual) | NAL |
| Zinc | 0.158 mg/L (instantaneous)<br>0.26 mg/L (annual) | NEL[3]<br>NAL |
| Copper | 0.027 mg/L (instantaneous)<br>0.0332 mg/L (annual) | NEL[4]<br>NAL |
| pH | 6-9 s.u. (instantaneous) | NAL |

Table 1 Thresholds. Beginning with the 2025-2026 Reporting Year, under this Consent Decree, an "Action Plan Threshold" for Table 1 is defined as follows: where the concentration of any specific pollutant in any two (2) storm water samples from the same Facility within a Reporting Year is above the applicable annual value in Table 1; or where the concentration of any pollutant in any one (1) storm water sample from one of the four Facilities is above the applicable instantaneous values in Table 1.

Action Plan. For the Term of this Decree, if (a) Defendant has an unauthorized discharge in violation of Paragraph 12, or (b) Defendant receives a laboratory report for any two (2) storm water samples from the same Facility within a Reporting Year which demonstrates any pollutant concentration above the values set forth in Table 1, or (c) Defendant receives a laboratory report for storm water samples from any of the Facilities within a Reporting Year which demonstrates any one (1) pollutant concentration above the applicable instantaneous values set forth in Table 1; or (d) after an advanced treatment system is fully installed, operational, and optimized, if ever, the advanced treatment system discharges untreated storm water in smaller than

---

[3] The zinc NEL for Coyote Creek is applicable to the Valla Facility only.
[4] The copper NEL for Coyote Creek is applicable to the Valla Facility only.

[PROPOSED] CONSENT DECREE

a Design Storm, (each a "Trigger Event"), Defendant shall prepare and submit to LA Waterkeeper a plan to address the conditions on-site, if any, that may be causing or contributing to the Trigger Event ("Action Plan"). The complete Action Plan shall be submitted to LA Waterkeeper within sixty (60) days. If an Action Plan is simultaneously required for more than one Facility, Defendant may submit one Action Plan that addresses all applicable Facilities.

        a.   <u>Action Plan Requirements</u>.

               i.  Each complete Action Plan submitted shall include at a minimum:

                    1.  the identification of the pollutant(s) discharged in excess of the numeric limit(s);

                    2.  an assessment of the potential source(s) of each Trigger Event and/or applicable unauthorized non-storm water discharge(s);

                    3.  the identification of additional BMPs, if any, that the Facility implemented to meet the numeric limit(s) as well as the design plans and calculations of these additional BMPs; and

                    4.  time schedules for implementation of the additional BMPs, if any.

              ii.  The time schedule(s) for implementation shall ensure that additional BMPs, if any, are implemented promptly, but in no event later than 60 days following the submission of the Action Plan, unless a later implementation date is mutually agreed upon by the Settling Parties.

             iii.  Within forty-five (45) days of each of the BMPs set forth in the Action Plan being implemented, Defendant shall confirm to LA Waterkeeper in writing, with photographs,

that such BMP has been implemented as set forth in the
Action Plan.

b.  Action Plan Proposed BMPs. In Regulated Areas, the following
BMPs should generally be evaluated for potential inclusion in
Action Plans:

    i.  Evaluation of Existing BMPs. Replacing, rehabilitating, or
eliminating existing BMPs, taking into account the age of
the BMPs involved or employed, the engineering aspect of
the application of various BMPs, and any adverse
environmental impact of the BMPs.

    ii.  Hydrologic Controls. Installation of additional berms or
equivalent structural controls necessary to reduce or prevent
storm water from flowing off site other than through the
engineered storm water conveyance system or storm water
retention or treatment facilities.

    iii.  Sweeping. The increased/more frequent use of sweepers
and manual sweeping in otherwise inaccessible areas.

c.  Action Plan Review. LA Waterkeeper shall have forty-five (45)
days upon receipt of Defendant's complete Action Plan to provide
Defendant with comments. Within forty-five (45) calendar days of
receiving LA Waterkeeper's proposed revisions to an Action Plan,
Defendant shall consider each of LA Waterkeeper's recommended
revisions and accept them or justify in writing why any comment
or proposed revision is not incorporated. Action Plan(s) developed
and implemented pursuant to this Consent Decree are an
obligation of this Consent Decree. Any disputes as to the
adequacy of an Action Plan shall be resolved pursuant to the

[PROPOSED] CONSENT DECREE

1    dispute resolution provisions of this Consent Decree, set out in

2    Section IV below.

3         d.    Defendant shall revise the then-current SWPPP to reflect the

4    changes required by the Action Plan, as set forth in Paragraph 26

5    below.

6    **D.**   **VISUAL OBSERVATIONS**

7    22.   <u>Storm Water Discharge Observations</u>. During the Term, Defendant shall

8    conduct visual observations during the Facilities' operating hours during every

9    Qualifying Storm Event. Such inspections shall comply with all requirements of

10    Section XI.A.2 of the General Permit. If four (4) QSEs have been sampled at a given

11    Facility during a given Reporting Year, then Defendant is relieved of this obligation

12    at that Facility for the remainder of that Reporting Year.

13    23.   <u>Monthly Visual Observations</u>. During the Term, Defendant shall conduct

14    monthly non-storm water visual observations of the Facilities consistent with Section

15    XI.A.1 of the General Permit. Such observations shall include outfalls, Discharge

16    Points, outdoor industrial equipment and storage areas, outdoor industrial activities

17    areas, BMPs, and all other potential sources of industrial pollutants. All Discharge

18    Points shall also be inspected for accumulation of dust, sediment, sand, grit, oily

19    substances, oily sheens upon any standing water, and other materials associated with

20    operations at the Facilities. During the Wet Season, such inspections shall further

21    include observations of all storm water BMPs that are used only during the Wet

22    Season at the Facilities to ensure that operational BMPs are being implemented,

23    structural BMPs are in good condition or working order, and that BMPs have been

24    effective in producing clean conditions at the Facilities. Such inspections shall further

25    include observation as to whether there are any non-storm water discharges from the

26    Facilities.

27    24.   <u>Visual Observations Records</u>. Defendant shall maintain observation

28    records to document compliance with Paragraphs 22 and 23 in the manner required

by Section XI.A.3 of the General Permit. Such records shall include the persons who completed the inspection, the date of the inspection, and notes sufficient to describe the completed activity and all observations thereof, including but not limited to: (i) whether BMPs are in a proper, working condition; (ii) whether any repair, replacement, or operation and maintenance is needed for any BMPs; (iii) other conditions that have the potential to lead to pollutant loading in storm water discharges. Defendant shall provide LA Waterkeeper with a copy of those records within thirty (30) days of receipt of a written request from LA Waterkeeper for those records.

**E.    TRAINING AND PLANS**

25.    <u>Employee Training</u>. Within sixty (60) days of the Effective Date, Defendant shall implement training that meets the following requirements and ensures (1) that employees are designated with responsibility for ensuring each Facility's compliance with the General Permit and this Consent Decree ("Designated Employees"), and (2) that these Designated Employees are properly trained to perform the activities required by the General Permit and this Consent Decree ("Training Program"). Notwithstanding the foregoing, the Parties acknowledge and agree that Defendant may engage contractors to perform the activities required by the General Permit and this Consent Decree for one or more of the Facilities, in which case Defendant shall obtain and retain written records confirming that contractor personnel performing such activities have received appropriate training. The Parties recognize that Defendant uses contractors to perform activities under the General Permit and that the Defendant is not responsible for conducting training for contractors.

a.    <u>Training Frequency</u>. Training shall be provided to Designated Employees by a QISP familiar with the requirements of this Consent Decree and the General Permit, and shall be repeated as necessary to ensure that all relevant employees are familiar with

the requirements of this Consent Decree, the Permit, and the Facilities' SWPPP. All relevant new staff shall receive this training before assuming responsibilities for implementing the SWPPP;

b.  <u>Sampling Training</u>. Defendant shall designate an adequate number of employees or contractors necessary to collect storm water samples as required by this Consent Decree, including training to ensure samples are properly collected, stored, and submitted to a certified laboratory;

c.  <u>Visual Observation Training</u>. Defendant shall provide training on how and when to properly conduct visual observations to Designated Employees; and

d.  <u>Non-Storm Water Discharge Training</u>. Defendant shall train all Designated Employees at the Facilities on the General Permit's prohibition of non-storm water discharges, so that Designated Employees know what non-storm water discharges are and how to detect and prevent non-storm water discharges; and

e.  <u>Records</u>. Defendant shall maintain training records to document compliance with this Paragraph.

26.  <u>SWPPP Revisions</u>.

a.  <u>Initial SWPPP Revisions</u>. Defendant shall amend (or have had amended) the Facilities' SWPPP to ensure that it contains necessary provisions to comply with the General Permit, and submit the complete, updated SWPPP to LA Waterkeeper within 60 days of the Effective Date for LA Waterkeeper's review and comment. The parties recognize that, by the time this Decree is lodged and/or entered, the SWPPP revisions required under this

[PROPOSED] CONSENT DECREE

section may have occurred. The complete, updated SWPPP shall contain, at a minimum, the following elements:

    i.   A revised pollutant source assessment, including all elements required by Section X.G of the General Permit as well as assessments of the potential for the Facilities' storm water discharges to contain pollutants for which the Receiving Waters are 303(d) listed and/or have Total Maximum Daily Loads;

    ii.  A detailed narrative description and assessment of each industrial activity with the potential to impact storm water quality occurring at the Facilities as required by Section X.G of the General Permit;

    iii. Descriptions of all BMPs in accordance with Section X.H.4 of the General Permit, including BMPs required by this Consent Decree;

    iv. A set of site maps that comply with Section X.E of the General Permit and provisions of this Consent Decree, including accurately depicting the different drainage areas and flows;

    v.  A MIP as required by Sections XI and X.I of the General Permit;

    vi. A designation (by position/title) of employees responsible for carrying out storm water management, monitoring, sampling and SWPPP implementation, e.g., visual inspection of each specific area, monitoring each specific BMP, sampling, etc.; and

    vii. A Training Program as described above in Paragraph 25.

[PROPOSED] CONSENT DECREE

b.   <u>Additional SWPPP Revisions</u>. UPRR will comply with General Permit provisions regarding SWPPP updates where required.

c.   <u>Review of SWPPP</u>. For any SWPPP updates pursuant to Subparagraphs a and b, LA Waterkeeper shall have thirty (30) days upon receipt of Defendant's complete SWPPP to provide Defendant with comments. Within thirty (30) days of receiving LA Waterkeeper's comments and proposed changes to the SWPPP, Defendant shall consider each of the comments and proposed changes and either accept them or justify in writing why a change is not incorporated. The Parties agree to work in good faith to resolve any disputes with respect to the SWPPP, and any remaining disputes will be resolved through timely initiation of the dispute resolution procedures in Section IV below. Following its incorporation of proposed modification or additions (if any) into each revised SWPPP, Defendant shall upload the revised SWPPP to SMARTS.

**F.**   **COMPLIANCE MONITORING AND REPORTING**

27.   LA Waterkeeper may conduct up to two site inspections ("Site Inspection") at each of the Facilities for the purpose of ensuring compliance with this Consent Decree and the General Permit. One of these Site Inspections may be conducted after the first Reporting Year, and one other Site Inspection may be conducted prior to the end of the Term. Any Site Inspection shall occur during normal business hours and LA Waterkeeper will provide Defendant with at least forty-five (45) days' notice for planning purposes. Notice will be provided by electronic mail to the individual(s) designated below at Paragraph 53. Either Site Inspection may be conducted during wet weather conditions ("Wet Weather Inspection"). To notice a Wet Weather Inspection, Plaintiff will provide at least thirty (30) days' notice of its intent to conduct such an inspection. Plaintiff will then

[PROPOSED] CONSENT DECREE

provide at least seven (7) days notice of the specific date it wishes to conduct a Wet Weather Inspection. If forecast conditions shift, Plaintiff can provide updated notice of the specific date, at least seven (7) days in advance of the noticed date. Plaintiff will confirm or cancel at least twenty-four (24) hours in advance of the Wet Weather Inspection. Site Inspections must be escorted for safety and security considerations. During any Wet Weather inspection, if any, Plaintiff may request that Defendant collect a split sample of industrial storm water discharge from the Facilities' designated industrial discharge point(s) to the extent that discharges are occurring, and provide a sample to LA Waterkeeper for analysis. LA Waterkeeper's representative(s) may observe the split sample(s) being collected by Defendant's representative. LA Waterkeeper shall be permitted to take photographs or video recording during any Site Inspection. At LA Waterkeeper's election, a virtual site inspection can be performed whereby a representative of UPRR video livestreams a site walkthrough at LA Waterkeeper's direction.

28.    Document Provision. During the Term, Defendant shall provide a copy to LA Waterkeeper, by electronic mail to the individual(s) designated below at Paragraph 53, on all compliance documents, monitoring and/or sampling data, written communications and/or correspondences, or any documents related to storm water compliance at the Facilities that are submitted to the Regional Board, the State Board, and/or any state or local agency, county or municipality.

29.    Compliance Monitoring. Defendant shall partially defray costs associated with Plaintiff's monitoring of Defendant's compliance with this Consent Decree during the Term by paying Sixty Thousand Dollars ($60,000.00) within forty-five (45) days of the Entry Date. Payment pursuant to this Paragraph shall be made via Electronic Funds Transfer to Los Angeles Waterkeeper. Details of the Electronic Funds Transfer will be provided by counsel for Plaintiff to counsel for Defendant. Please include the Facility's name and a brief description of the reason for payment in

1  the memo line. Failure to submit payment as required under this Paragraph will
2  constitute breach of the Consent Decree.

### G.    ENVIRONMENTALLY BENEFICIAL PROJECT, LITIGATION FEES AND COSTS, MISSED DEADLINES, AND INTEREST

30.    <u>Environmentally Beneficial Project</u>. To fund environmentally beneficial project activities that will reduce or mitigate the impacts of storm water pollution from industrial activities occurring in the Dominguez Channel and San Gabriel River Watersheds, Defendant shall make a payment totaling One Hundred Twenty Thousand Dollars ($120,000.00) to the Marine Mammal Care Center made within forty-five (45) days of the Entry Date, payable to the Marine Mammal Care Center and sent via overnight mail to Marine Mammal Care Center, 1536 W. 25th Street, Box #272, San Pedro, CA 90732-4463. Failure to submit payment as required under this Paragraph will constitute breach of the Consent Decree.

31.    <u>LA Waterkeeper's Fees and Costs</u>. Defendant shall pay a total of Two Hundred Thirty Five Thousand Dollars ($235,000.00) to LA Waterkeeper to partially reimburse Plaintiff for their investigation fees and costs, expert/consultant fees and costs, reasonable attorneys' fees, and other costs incurred as a result of investigating and filing the lawsuit, and negotiating a resolution of this matter within thirty (30) days of the Entry Date. The payment shall be made payable to: Aqua Terra Aeris Law Group and delivered by overnight carrier (no signature required) to Aqua Terra Aeris Law Group at 8 Rio Vista Ave., Oakland, CA 94611. Failure to submit payment as required under this Paragraph will constitute breach of the Consent Decree.

32.    <u>Interest on Late Payments</u>. Defendant shall pay interest on any payments, fees, or costs owed pursuant to this Consent Decree that are not received by the due date. The interest shall accrue starting the next business day after the payment is due and shall be computed at a rate equal to the lower of: (i) 10% per year (0.833% per month); or (ii) the maximum rate permitted by applicable law. Interest shall continue to accrue daily on any outstanding balance until Defendant is current

on all payments then due under this Consent Decree, and shall be paid at the same time that the payments, fees, or costs owed are paid to LA Waterkeeper. Interest on late payments shall be paid by check payable to: Marine Mammal Care Center, and such funds shall be used for the sole purpose of funding environmentally beneficial projects, as described in Paragraph 30. Payment shall be sent via overnight mail to Marine Mammal Care Center, 1536 W. 25th Street, Box #272, San Pedro, CA 90732-4463.

## IV.   DISPUTE RESOLUTION

33.   <u>Meet and Confer</u>. Either Party to this Consent Decree may invoke the dispute resolution procedures of this Section IV by notifying the other Party in writing of the matter(s) in dispute and of the disputing Party's proposal for resolution. The Parties shall then meet and confer in good faith (either telephonically or in person) within ten (10) days of the date of the notice in an attempt to fully resolve the dispute no later than thirty (30) days from the date of the meet and confer.

34.   <u>Settlement Conference</u>. If the Parties cannot resolve the dispute within thirty (30) days from the date of the meet and confer described in Paragraph 33, the Parties agree that the dispute may be submitted for formal resolution by filing a motion before the United States District Court for the Central District of California. The Parties agree to request an expedited hearing schedule on the motion.

35.   In resolving any dispute arising from this Consent Decree before the Court, the prevailing Party shall be entitled to seek fees and costs incurred pursuant to the provisions set forth in Section 505(d) of the Clean Water Act, 33 U.S.C. § 1365(d), and applicable case law interpreting such provisions, or as otherwise provided for by statute and/or case law.

## V.   MUTUAL RELEASE OF LIABILITY AND COVENANT NOT TO SUE

36.   <u>Plaintiff's Waiver and Release of Defendant</u>. In consideration of the above, upon the Effective Date of this Consent Decree, Plaintiff, on its own behalf and on behalf of its officers and directors, release Defendant, its officers, directors,

managers, employees, members, parents, subsidiaries, divisions, affiliates, successors or assigns, agents, attorneys and other representatives, from and waives all claims, demands, or causes and/or rights of action for damages, penalties, fines, injunctive relief, or any other claim or relief (a) relating to or resulting from allegations and claims set forth in the Notice Letter; (b) for any past violations at or by the Facilities of the General Permit alleged, or that could have been alleged, in the Complaint; and (c) for any violations of the Clean Water Act and/or General Permit that were raised in the 60-Day Notice Letter and/or the Complaint up to and including the Termination Date of this Consent Decree. This Paragraph does not constitute a waiver or release of any claims relating to implementation or enforcement of this Consent Decree including, but not limited to, issues subject to Dispute Resolution.

37.     Defendant's Waiver and Release of Plaintiff. In consideration of the above, upon the Effective Date of this Consent Decree, Defendant, on its own behalf and on behalf of its officers, directors, employees, parents, subsidiaries, affiliates and each of their successors or assigns, release Plaintiff, its officers and directors, from and waives all claims, demands, or causes and/or rights of action for damages, penalties, fines, injunctive relief, or any other claim or relief (a) relating to the 60-Day Notice Letter and/or the Complaint up to and including the Termination Date of this Consent Decree.

38.     Nothing in this Consent Decree limits or otherwise affects Plaintiff's rights to address or take any position that it deems necessary or appropriate in an informal or formal proceeding before the State Board, Regional Board, EPA, or any other judicial or administrative body on any matter relating to Defendant's compliance at the Facilities with the General Permit or the Clean Water Act occurring or arising after the Effective Date of this Consent Decree.

## VI.    MISCELLANEOUS PROVISIONS

39.     No Admission of Liability. The Parties enter into this Consent Decree for the purpose of avoiding prolonged and costly litigation. Neither the Consent

Decree nor any payment pursuant to the Consent Decree shall constitute or be
construed as a finding, adjudication, or acknowledgement of any fact, law or liability,
nor shall it be construed as an admission of violation of any law, rule, or regulation.
Defendant maintains and reserves all defenses it may have to any alleged violations
that may be raised in the future.

40.    Counterparts. This Consent Decree may be executed in any number of
counterparts, all of which together shall constitute one original document. Telecopy
and/or facsimile copies of original signature shall be deemed to be originally
executed counterparts of this Consent Decree.

41.    Authority. The undersigned representatives for Plaintiff and Defendant
each certify that s/he is fully authorized by the Party whom s/he represents to enter
into this Consent Decree. A Party's signature to this Consent Decree transmitted by
facsimile or electronic mail shall be deemed binding.

42.    Construction. The language in all parts of this Consent Decree shall be
construed according to its plain and ordinary meaning, except as to those terms
defined in the Permit, the Clean Water Act, or specifically herein. The captions and
paragraph headings used in this Consent Decree are for reference only and shall not
affect the construction of this Consent Decree.

43.    Full Settlement. This Consent Decree constitutes a full and final
settlement of this matter.

44.    Integration Clause. This is an integrated Consent Decree. This Consent
Decree is intended to be a full and complete statement of the terms of the agreement
between the Parties and expressly supersedes any and all prior oral or written
agreements, covenants, representations, and warranties (express or implied)
concerning the subject matter of this Consent Decree.

45.    Severability. In the event that any provision, paragraph, section, or
sentence of this Consent Decree is held by a court to be unenforceable, the validity of
the enforceable provisions shall not be adversely affected.

46.    <u>Choice of Law</u>. The laws of the United States shall govern this Consent Decree.

47.    <u>Diligence</u>. Defendant shall diligently file and pursue all required permit applications for any required BMPs and shall diligently procure contractors, labor, and materials needed to complete all BMPs by the required deadlines.

48.    <u>Effect of Consent Decree</u>. Compliance with this Consent Decree does not mean that Defendant is complying with the General Permit, the Clean Water Act, or any other law, rule, or regulation.

49.    <u>Negotiated Settlement</u>. The Settling Parties have negotiated this Consent Decree, and agree that it shall not be construed against the Party preparing it, but shall be construed as if the Settling Parties jointly prepared this Consent Decree, and any uncertainty and ambiguity shall not be interpreted against any one Party.

50.    <u>Modification of the Consent Decree</u>. This Consent Decree, and any provisions herein, may not be changed, waived, discharged, or terminated unless by a written instrument, signed by the Parties and approved by the Court, except that the Parties may make minor modifications to the Consent Decree without Court approval. Any request to modify any provision of the Consent Decree, including but not limited to any deadline(s) set forth herein, must be made in writing at least fourteen (14) days before the existing deadline(s) applicable to the provision(s) proposed to be modified.

51.    <u>Assignment</u>. Subject only to the express restrictions contained in this Consent Decree, all of the rights, duties and obligations contained in this Consent Decree shall inure to the benefit of and be binding upon the Parties, and their successors and assigns. Defendant shall notify Plaintiff within ten (10) days of any assignment.

52.    <u>Force Majeure</u>. Neither of the Parties shall be considered to be in default in the performance of any of their respective obligations under this Consent Decree when performance becomes impossible due to a Force Majeure event. A Force Majeure event is any circumstance beyond a Settling Party's control, including

[PROPOSED] CONSENT DECREE

without limitation, any act of God, war, fire, earthquake, flood, windstorm, pandemic, public health crisis, or natural catastrophe; criminal acts; civil disturbance, vandalism, sabotage, or terrorism; restraint by court order or public authority or agency; or action or non-action by, or inability to obtain the necessary authorizations or approvals from any governmental agency. A Force Majeure event shall not include normal inclement weather, economic hardship, inability to pay, or employee negligence. Any Party seeking to rely upon this Paragraph to excuse or postpone performance shall have the burden of establishing that it could not reasonably have been expected to avoid the Force Majeure event and which by exercise of due diligence has been unable to overcome the failure of performance. The Parties shall exercise due diligence to resolve and remove any Force Majeure event.

53.    <u>Correspondence</u>. All notices required herein or any other correspondence pertaining to this Consent Decree shall be, the extent feasible, sent via electronic mail transmission to the e-mail address listed below, or if electronic mail is not feasible, then by certified U.S. mail with return receipt, or by hand delivery to the following addresses:

| If to Plaintiff: | If to Defendant: |
|---|---|
| Los Angeles Waterkeeper | Allison Watkins Mallick |
| Erina Kwon | Jeffrey H. Wood |
| Benjamin Harris | Baker Botts L.L.P. |
| Madeleine Siegel | 101 California Street |
| 360 E 2nd St., Suite 250 | 36th Floor, Suite 3600 |
| Los Angeles, CA 90012 | San Francisco, California 94111 |
| Email: erina@lawaterkeeper.org | Email: |
| Email: ben@lawaterkeeper.org | allison.mallick@bakerbotts.com |
| Email: madeleine@lawaterkeeper.org | Email: jeff.wood@bakerbotts.com |
| Phone: (310) 394-6162 | Phone: (415) 291-6200 |
| | |
| With copies to: | With copies to: |
| Aqua Terra Aeris Law Group LLP | Robert C. Bylsma |
| Anthony M. Barnes | Union Pacific Railroad Company |
| Erica A. Maharg | 24125 Aldine Westfield Rd, Law |
| 8 Rio Vista Ave. | Dept. Email: RCBYLSMA@up.com |
| Oakland CA, 94611 | Phone: (281) 350-7533 |

29

Email: amb@atalawgroup.com
Phone: 917.371.8293

Notifications of communications shall be deemed submitted three (3) days after the date that they are postmarked and sent by first-class mail, or immediately after acknowledgement of receipt via email by the receiving Party. Any change of address or addresses shall be communicated in the manner described above for giving notices.

54.    If for any reason the Federal Agencies should object to entry of this Consent Decree or to any portion of this Consent Decree or the Court should decline to approve this Consent Decree in the form presented, the Parties shall use their best efforts to work together to modify the Consent Decree within thirty (30) days so that it is acceptable to the Federal Agencies or the Court. If the Parties are unable to modify this Consent Decree in a mutually acceptable manner that is also acceptable to the Court, this Consent Decree shall immediately be null and void as well as inadmissible as a settlement communication under Federal Rule of Evidence 408 and California Evidence Code section 1152.

The Parties hereto enter into this Consent Decree and submit it to the Court for its approval and entry as a final judgment.

IN WITNESS WHEREOF, the undersigned have executed this Consent Decree as of the date first set forth below.

APPROVED AS TO CONTENT

Dated: 1/30/2026 , 2026                    By: _____
                                               Bruce Reznik
                                               Executive Director
                                               Los Angeles Waterkeeper

Dated: JANUARY 27, 2026                    By: _____
                                               James B. Boles
                                               Vice President - Law
                                               Union Pacific Railroad Company

APPROVED AS TO FORM

                                               AQUA TERRA AERIS LAW GROUP
                                               LAW OFFICE OF WILLIAM CARLON

Dated: 1/30/2026 , 2026                    By: _____
                                               Anthony M. Barnes
                                               William N. Carlon
                                               Attorneys for Plaintiff
                                               Los Angeles Waterkeeper

Dated: January 28 , 2026                   By: _____
                                               Allison Watkins Mallick
                                               Jeffrey H. Wood (*pro hac vice*)
                                               Attorney for Defendant
                                               Union Pacific Railroad Company

[PROPOSED] CONSENT DECREE

**IT IS SO ORDERED.**
**FINAL JUDGMENT**

Upon approval and entry of this Consent Decree by the Court, this Consent Decree shall constitute a final judgment between the Plaintiff and Defendant.

Dated: _____        CENTRAL DISTRICT OF CALIFORNIA


_____
HONORABLE SERENA R. MURILLO
United States District Court Judge

[PROPOSED] CONSENT DECREE